It please the court, Daniel Raybier on behalf of the Kalispel Tribe of Indians, I'd like to reserve four minutes for rebuttal. This case essentially involves four legal errors, five arbitrary excuses, and ten pages of evidence regarding each of those. First, regarding the four legal errors. As explained in our briefs, there are four independent but interrelated reasons why this court must reverse the district court and remain to the Department of the Interior for reconsideration of its two-part determination that approved the Spokane Tribe's newest off-reservation casino located just two miles from the Kalispel Tribe's existing casino. In essence, these four reasons can be summed up, or these four errors can be summed up in one sentence. The plain meaning of the statute was violated by Interior's arbitrary excuses, and it arbitrarily departed from an established policy that violated its fiduciary duty. Counsel, before you go further, may I ask about what you just said, about the part that focuses on the established policy, deviating from established policy? My question is pretty specific. Can you tell me where in the district court you raised that argument? It's in the excerpts of record at page 521 in our opening brief on motion for summary judgment. First, Interior violated the plain meaning of 25 U.S.C. section 2719b1a, commonly called section 20 of the Indian Regulatory Act, or IGRA, when Interior found that the Spokane Tribe's casino would not be detrimental to the surrounding community despite significant, extended, unoffset, and unmitigated harm to Kalispel. Your brief reads as if that would be sufficient. Would that be sufficient? Suppose there was such harm to Kalispel. Would that be sufficient under the statute? Well, I don't need to suppose that there is such harm because on page... I'm not asking you. I'm asking a legal question. I'm supposing that there was such harm. Would that be sufficient to demonstrate that there was... If the agency had found such harm, would that be sufficient to meet the standard with regard to the detriment to the surrounding community? The department did find that there is harm and the district court recognized it. That is sufficient even under their asserted holistic analysis, both because the department did not actually do a holistic analysis that included recognition of Kalispel's harms, and because even if they did do a holistic analysis, the math simply doesn't add up. But I'm still asking a legal question, because your brief reads as if there... As long as there is detriment to the tribe, that is the end of the story, whether it's a big detriment or a little detriment or whatever. You're saying that the literal reading of the statute is as long as there's detriment to the tribe, that's it. Is that your position? It is not our position that any de minimis harm alone will preclude a positive determination. What is a non-de minimis harm? Significant, non-overwhelming, significant harm, but there's also vast benefit to the rest of the surrounding community. IGGRA's plain meaning certainly allows for a holistic analysis that includes consideration of a cost benefit analysis within the surrounding community. However, that has to be undertaken with recognition of the existing circumstances of the United States fiduciary duties to tribes and their distinct sovereign status. No benefits to any other component of the surrounding community will inure to Kalispel. Essentially, even though the statute's plain meaning, you said it permits, I would suggest it requires consideration of detrimental effects to the surrounding community, right? Yes. All right, and so my problem with your argument, and I think this is what Judge Berzon's getting at, but I'd like to give you a chance to respond to us. It seems to me that even though the statute clearly contemplates and requires consideration of whether there's going to be detriment to the surrounding community, your analysis would require Interior to reject any proposal if there's any detriment to one member, a tribal entity in the surrounding community. Not at all, your honor. I think it's important to recognize that the Kalispel tribe is a sovereign nation. We get that and we're not questioning the trust, but you're not answering the question. Could you go $1 impact, is that a loan? No, that's not the question. You're not answering the question because you keep restating the question. Let's say it's not a $1 impact, it's an impact. I mean, of some significance, but the amount of benefit to the surrounding community is vastly greater. Again, the benefits to this remainder of the surrounding community do not eliminate the harm to Kalispel. So that gets to my point, which is that I appreciate that argument, but it does seem to be your position that because there is harm to Kalispel, the project must be rejected, even though, per Judge Berzon's hypothetical, even if Interior decided that there wasn't detriment to the surrounding community. I just don't hear you answering that question. I apologize, I am answering it, but that gets to the other part of the holistic analysis of that. Under the statute and under the regulations, there certainly can be mitigation to Kalispel, and we have asked for that. I don't even hear the opposing parties denying that. The question, though, is what authority do you have for the implied assertion that it was required? That mitigation is required? Yes, sir. This is the plain meaning of the statute that this exception to the general prohibition on off-reservation gaming, there cannot be gaming unless it would not be detrimental to the surrounding community. It is undisputed that Interior's expert found that there would be $29 million in impact to Kalispel in just the first year. They also found, and I do think there is a question whether the agency specifically looked at both sets of benefits and detriments, but leaving that aside, or at least touch the bottom line on that, but there is record evidence that to the surrounding community as a whole, there would be something like $300 million of more business and thousands of additional jobs and so on. Whether the agency specifically looked at those two together, I'm going to ask your opposing counsel, but as to whether if they had done so or if they did do so, that would be sufficient to still think you're walking away from the problem, which is assuming that there was detriment to the tribe somewhere between what you say and what they say, or at least what they say, which is still relatively significant. Is that the end of the story? I think that it's helpful to look at one of the cases that they rely on, Stand Up for California. In rejecting the assertions by a tribe that was located outside of the community, the court there specifically noted that there's nothing in the regulations that suggests that Interior must treat differently situated communities identically. That makes it recognized that it's entirely appropriate to recognize that heights. And if you look at the nine specifically relevant pages of the Department of Interior's two-part determination, when they look at the impacts on services and income for the surrounding community, there is no discussion whatsoever of the impact to Kalispell. That's on pages 31 to 32 of the two-part determination. On pages 42 to 46, where they look at the anticipated costs of the impacts and the mitigation. Again, there's no discussion of the costs to Kalispell. There's no discussion of mitigation to Kalispell. Instead, the discussion of Kalispell's impacts only come up on pages 61 to 62 of the two-part determination, where they discuss consultation. But do they recognize those costs? Do they recognize them as actual legitimate? No. Instead, they say they dissipate, or they ameliorate, they won't prohibit. They even compare the revenue for Kalispell versus Spokane. But there's no balancing between the benefits to Spokane and the harm to Kalispell. So, Mr. Braybear, are you saying that the statute requires that explicit balancing? The statute clearly requires that the department consider both things detriment to the surrounding community first, best interests of the tribe, and then second detriment to the surrounding community. Both of those things must be considered. But I don't see anything in the language of the statute that requires that there be an explicit balancing of one against the other. And what concerns me about that is if they found just one or the other, does that mean that the gaming is rejected? There's a harm to someone in the surrounding community, so the gaming application is rejected. I just don't understand how your balancing works. There's two factors they have to consider. Let me be clear. I am not saying that it is appropriate to balance Spokane's benefits with Kalispell's harms. What I am saying is... Well, not that. I'm not asking about balancing. I'm including Kalispell and all the other members of the community and the best interests of the tribe. Balancing those two factors within the statute, is that what you believe is required? Not. That is the opposite. It's a two-part determination, and the benefits to Spokane are categorically separate from the detriment to the surrounding community. Okay, so I guess the reason you confused me is because you were just explaining we're on pages of their determination. They listed certain things about benefit to the community, but then didn't offset that by also discussing at the same time detriment to Kalispell. It sounded like you were advocating a balancing, so that's where I was. Not at all. What I'm simply saying is the Department of the Interior and the Spokane tribe, in defending the decision by Interior here, argue that it is appropriate to do a holistic analysis that offsets, so to speak, the harm to Kalispell with the hundreds of millions of dollars of asserted benefits to other components of the surrounding community. What I'm saying is first, that's a post hoc rationalization that's prohibited because the departments here did actually do that. Second, even if they did do that, it's not appropriate because of Kalispell's sovereign status and because the United States... But the statute says the surrounding community, including any nearby Indian tribes, right? Certainly. So it doesn't say anything should about the nearby Indian tribes as it includes them. It doesn't need to say anything special about the tribes because this is laid on the overlay of the fact that there is trust land for Kalispell that the United States acquired specifically for the purpose of acquiring land and trust. This is why the department specifically had a policy as stated in its enterprise and North Fork determinations to protect nearby Indian tribes that demonstrate likely detrimental impacts. But I mean, just to step back. Well, first of all, I understood your argument about those earlier cases to be a little different and maybe a little stronger, which is not just that there's a sentence in there that says X, but that there is an inconsistency with the cases. The cases have to be decided consistently and that they were decided consistently, not that you're taking a sentence out of it and plugging it in. Is that your argument? I'm not sure I follow your question. I'm just relying on that sentence that appears in those and saying it's a policy. I am saying that a holistic determination under section 20 in terms of detriment to the surrounding community has to be made consistent with existing law, meaning in the Department of the Interior's policy and its fiduciary duty and with simple math. They cannot say $1 million in mitigation to other communities minus $20 million in impacts to Kalispell in just the first year somehow equals zero detrimental impacts. Nor can they simply disregard Kalispell's impacts based on any of the various adjectives that they use. And for that reason, the decision should be reversed and vacated for reconsideration and mitigation. We're kind of almost up, or maybe it is up. I guess it is up. Is there anything you want to add right now? Not for now, Your Honor. Okay, well I'll give you a minute or two in rebuttal. Okay, so Ms. Rountree is going first. Is that correct? Yes, Your Honor. I'm sorry. I had unmuted myself. Yes. Good afternoon, Your Honors, and may it please the Court. I will begin with the questions that you were getting at. I will start with the fact that under AGRA, there must be a full analysis of the surrounding community. So Interior is required to look at impacts to not only nearby tribes, but local governments and all of the entities that fall within those categories. So two things about that. One is, if there was an inaccuracy in how the tribe's detriment was determined, then that would be a problem in terms of the holistic analysis, right? I'm sorry, did you say if there was an inaccuracy? If there were one. Even though the detriment to the tribe itself is not the end of the story, if there were an inaccuracy, that would make a problem as to the way in which the holistic analysis were done. Meaning if an Interior made an inaccurate projection? Yes. Okay. So I want to go into that in a minute, or I'd like you to. And secondly, a bigger issue for me is where in the record did the agency actually do this? I mean, they discussed the tribe, and they discussed all the benefits to the surrounding community. But where did it ever look at the whole and say, in the end, there is not a detriment to the surrounding community, but if there is a detriment to the tribe. Is that any place? Well, Your Honor, and I apologize, but the record as a whole does that analysis. There is no page that says this is looking at one versus the other. This is our analysis of the local governments, for example, versus Kalispell. The record is very heavy in terms of the determination itself. In all honesty, the briefing here, it's very heavy on the impacts to Kalispell because that's the voice that spoke the loudest during the preparation of the detrimental determination. And so we have a lot of information about impacts to Kalispell. And therefore, what you see most of in the record is that the impacts to Kalispell do not rise to the level of being detrimental to Kalispell, and that Kalispell will be able to continue its tribal functions. But I don't understand. If, for example, it is a benefit to the surrounding communities that there are going to be jobs due to construction and due to the new casino, then why isn't it a detriment to Kalispell, for example, if it can't provide these payments to members of the tribe or people are going to lose jobs by not being able to work in their casino, even in the short run? I mean, why should the detriment to Kalispell be sort of at the level of a disaster as opposed to simply detriment? They're going to have less jobs and they're going to have less payments. They're going to have less money for the government. Maybe they won't be able to run the government, but it's going to be harder. Why isn't that all a detriment? No. Well, first of all, the payments with which you're referring to, the court needs to be completely clear about this. There are payments called per capita payments. Kalispell has been financially capable. We are really clear on this because we've read the briefing, so we understand. The loss of per capita payments does not affect the operation of the tribal government. Your briefing makes that point very, very clear, but Judge Berzon is asking a different point and it's really critical because what I'm hearing you say now is you think that Interior decided there wasn't a detriment to Kalispell as opposed to looking at whether there's a detriment to the community as a whole. Are you really taking the position that this was not going to be detrimental to Kalispell? No. The language, the Interior, I want to make under the category of surrounding community, so we'll put that aside. Wilking specifically at Kalispell, the threshold in IGRA, as stated in the statutory purpose, is not that a casino will continue to make high profits. There's no guarantee under IGRA that a casino will continue to make high profits or will have a constant or consistent net revenue from gaming. It's a lower, more basic threshold in IGRA's purposes. It's that tribes are able to achieve self-sufficiency and economic development. Where do you get that from the statute? That's from Section 27021, which is the statement of the statutory purpose of IGRA. That's actually where I wanted to begin. For this court to assess what Interior did, given that we have such a broad statement in the detrimental determination provision, which says broadly, would the impact of the new casino be detrimental to the surrounding community? That's incredibly broad. This court has to find some way to determine whether Interior's analysis was reasonable. The one place that we can look, there's no dispute, is to look to the statutory purpose. That's set forth in 27. That's also incredibly broad, Counselor. You're getting away from our problem with this impact, which is pretty powerfully indicated by this record, that was going to be felt by Kalispell. Perhaps not in the long run. Perhaps they were going to take a hit initially because of the competition. You seem to be running away from this. If you would, please let me just, the purpose in IGRA is to allow for tribes to have self-sufficiency. If Interior were to find that Kalispell would remain self-sufficient and could develop economically, then it has met the purposes of IGRA. Let me ask you something. This casino was not owned by a tribe. It was just owned by some casino company. Would the fact that they were losing a large amount of money, for some years at least, and have issues with being able to pay staff and so on, be a detriment? You're saying if there were another... If it wasn't owned by a tribe, would this kind of economic impact be a detriment? That would go into the mix, go into the whole estate. Well, the problem is we're functioning under IGRA, and as I said... I want to know under IGRA and under that provision about the detriment to the surrounding community. Let's suppose every business in town was going to lose a lot of business and have to lay off major staff. Would that be a detriment? I do not want to answer for a hypothetical that Interior might be opposed to, but given what you said, clearly that is getting much closer to... Aside from the fact that it's an Indian tribe, at least be considered as if it were some other business in town. No, it's not given any lesser weight. The question is, where is the threshold, is what I'm asking. There is no absolute threshold in IGRA as to what constitutes a detrimental impact. Clearly, it can't be just an impact because the statute doesn't say if a nearby tribe will be impacted. It's actually straightened out by the holistic view. In other words, you seem to be buying into the tribe's view that the tribe is to be treated separately and specially. No, you're... Don't treat them separately and specially. Go ahead, I'm sorry. No, I just want to make sure that you understand that it's not what I'm saying. I think you're asking me, what is the level of impact to a tribe that constitutes a detriment? Perhaps that's what you're trying to... Well, a detriment that goes into the overall determination of detriment. Not a detriment that will kill off the Spokane casino, just a detriment that you need to count. Well, again, you're asking what would be a detriment to Spokane? I mean, to Kalispell? No, I'm asking whether in determining the detriment to the nearby community as a whole, you back out certain detriments before you even consider them. I mean, that's what seems to be what you're saying. That detriments to entities that don't cross some threshold are backed out before they're ever put into the whole... I'm not sure I understand what you mean by backed out. But if interior determines based on all of the information that's provided to it, including by, for example, Kalispell, that Kalispell will not be detrimentally impacted. There is no dispute that Kalispell will be impacted. But for example, if this court looks at its decision in Cachalditi, the court noted that there will be $77 million per year in gaming reductions to the tribes in that area. And two tribes were going to be affected by $51 million per year. The court didn't indicate, in dicta or otherwise, that the mere amount of money is dispositive of whether there's a detrimental impact. The question is for interior to look at a case-by-case basis as to the impacts of the tribe and will it be detrimentally affected. That's not saying, well, the tribe go broke. It's only consistent with the low threshold that is in IGRA. It's self-sufficient... Is that the same standard that's applied to other businesses in Jamson? As long as they're not going broke, any loss for them doesn't count? There is no... I'm loathe to say there's a specific standard, but that's one of the things that are considered. In the federal register, interior made clear that it was not going to set a standard for detriment. It wasn't going to define it. It was going to assess it on a case-by-case fact basis. Based on this record, Kalispell does not dispute that it will continue to operate its tribal functions. It will continue to provide for the welfare of its tribe. It will have an impact. It will experience its losses. Those losses will be temporary. The record shows that losses will be temporary. The gaming market can sustain this new entrant. The gaming market will grow. Kalispell has not indicated that it will be at rock bottom. It's indicating that it will experience financial losses, but that alone does not constitute detriment. I have clearly eaten up... Wait, wait, wait, wait, wait, wait. Excuse me. Do you mean that doesn't constitute detriment to Kalispell, or do you mean that it doesn't constitute detriment to the surrounding community and that the latter is what's being measured? Speaking first, that wouldn't constitute detriment to Kalispell, and then that has to be inserted into the assessment of the surrounding community as a whole. Just one quick follow-up question, if Judge Berzon will allow me. Is it your position that there isn't harm demonstrated here, detriment demonstrated to Kalispell, because Kalispell was able to continue to function and achieve economic sufficiency consistent with the purpose of IGRA? Is that your position? It's that the harm or the impact of Kalispell does not rise to the level of detriment as suggested in IGRA's purposes, yes. Thank you. Okay, thank you very much, Ms. Spinelli. Thank you, Danielle Spinelli for the Spokane Tribe. Judge Berzon, I'd like to start with your question about what constitutes detriment. All impacts, all detrimental impacts constitute detriment. The lost revenues to Kalispell are a detriment. So you disagree with the position that was just articulated, is that right? I don't believe I do. I don't want to speak for Ms. Roundtree, but I don't believe that's what she was saying. I think the point here is that the impact to Kalispell, which was considered along with the impact to all the other gaming enterprises and all the other businesses in the Spokane community, did not amount to a detriment that outweighed the enormous benefits that Interior found would Spokane's project would yield. That to me is a more sensitive, I do understand Ms. Roundtree who said otherwise, which is concerning because she's representing the agency directly and you're not. But I think your legal point is the right one. So the question then is, where did the agency do this? I am happy to tell you that, Judge Berzon. The record here is large, but I think there are a few places that will be the most helpful for the court to look. One of them is the final environmental impact statement. There is a very substantial analysis of the economic effect of Spokane's project on the surrounding community, including but not limited to Kalispell in section 4.7.1 of the final environmental impact statement that appears at the Spokane Tribe's excerpts of record at pages 81 to 93. I know that they did that analysis, but they never actually... The problem is that it does seem to me that the agency's treatment of Kalispell as it fit into the overall analysis was more along the lines that Ms. Roundtree is suggesting, i.e. they said it just didn't rise to enough to count at all. That's what she was saying, I think. I believe that Interior did two things, Judge Berzon. First of all, they did a very detailed and in-depth economic analysis that's reflected in several studies that are attached to the draft and final environmental impact statements, which look at the economic effect that the Spokane Tribe's casino would have on the community and expressly take into account substitution effects, which is the amount that would be lost by the other gaming facilities in the area and specifically the amount that would be lost by Kalispell's casino in terms of revenues. Interior quantified that. It quantified the benefits. It quantified the impact on Kalispell. One clearly is far larger than the other. So that's one thing that they did, and that again appears in the final environmental impact statement at the Spokane Tribe's excerpts of record. 81 to 93. And you'll see, if you look at that, just to take one example, Judge Berzon, that I believe you brought up, you asked, well, Interior says there are going to be a lot of jobs created by this project, but what about the jobs that Kalispell's casino is going to lose? Well, that was specifically taken into account. And so, you know, for instance, on page 187 of the Spokane Tribe's excerpts of record, it looks at the lost jobs, both at Kalispell's facility and at the other existing gaming facilities in the area, and says the proposed West Plains Casino, that's Spokane's project, would cause a significant net gain in county employment and net reduction in poverty. So that economic analysis was done on a net basis, just as the D.C. Circuit said it should be done. Interior looked at what the effect on the surrounding community would be as a whole, and not simply on one part of the surrounding community, such as one tribe. Could this be a record site for where the DOIs discuss the detriment to the Kalispell Tribe? In its decision? Yes, so the detriment... Not in the... Not in the FEIS. So the secretarial... No, it could be in the EIS, but not in the attached study. Yes, so yes, so what I've been referring to so far is the FEIS. The effect on Kalispell is also specifically discussed in the FEIS. I apologize, and that is at pages 73 to 75 of the FEIS. And then that same analysis is repeated in the two-part determination. So Interior did two things. It first did this hard look at all the economic impacts on the community. Second, because Kalispell asked it to. Kalispell, after the draft environmental impact statement, submitted its own report saying this is going to have a catastrophic effect on us and our ability to run our government and provide services. In the final EIS, Interior looked at that and said, that report is entirely inaccurate and unreliable. It's not correct. Um, it looked at what the effect on Spokane's... I'm sorry, on Kalispell's budget would be, focusing on the first year after full build-out of Spokane's facility. And it found that there would be a 13.8% decrease in Kalispell's budget. And that after taking out per capita payments, that would be reduced to 6.7%. Now that's not de minimis, but it's not catastrophic. Why are we taking out the payments? We're not taking them out. Interior looked at them differently because tribes are not allowed to make per capita payments until after they have adequately funded their governmental services. That's why... It impacts the members of the tribe. It does. It does. I don't think anyone is saying that it doesn't. The point is simply that, yes, there will be an impact on Kalispell. It will not be a catastrophic impact. It will diminish after one year. And under those circumstances, even looking at the numbers that Kalispell provided Interior, Interior found that it would still... Which are exaggerated. Interior found that it would still have 14 times as much per member as Spokane. And in light of all of that, it concluded that there wouldn't be such a major adverse impact on Kalispell given the fact that the overall economic analysis clearly tips in favor of the project as to say that this is going to be detrimental to the surrounding community as a whole. And that kind of predictive judgment gets very substantial deference, as this court said in the Cachaljeehe case. It does. And we cut off, I cut off, your co-counsel was explaining what's very well briefed this point that after the tribe can reach the threshold of providing its, I'll say, basic services, I'm summarizing, only then can they make the per capita payments, right? We all understand that. But is it your position? We're really trying to get at this. That's no small thing. That's a detriment. I'll just say, I think that's a detriment that Kalispell couldn't, of sorts, using the term loosely, perhaps not a term within the context of IGRA. But it sure looks to me from these studies like Kalispell was going to take a hit, particularly initially. And then over time, there was a question about how that might shake out. But I still get back to wanting to figure out how we know whether there's an overall to quantify and qualify the harm that I think Kalispell was going to incur when we looked whether there was a reasonable decision made about whether or not there was, you know, detriment to the surrounding community. Are you drawing the line at, I think, where it was just suggested where we should look to the overall purpose of IGRA, which is self-sufficiency of tribes? Or are you drawing it at the place where the tribe could make the per capita payment and as long as they could meet their basic services, then there isn't a sufficient detriment? Or where's the tipping point? I think, I mean, the overall question, obviously, as the court knows, is will this project be detrimental to the surrounding community? And as the D.C. Circuit held, that means to the surrounding community as a whole, not to any one part of it. And therefore, what that means is the project has to, on balance, have a positive or at impact on the surrounding community, even if there are certain impacts that are not directly mitigated, as with Kalispell. Okay, but if we had a different case, let's think of a hypothetical for a minute. And maybe your answer is just that this case doesn't present the hypothetical. But at some point, I would be concerned, particularly if we're talking about another tribe with whom the agency has a trust relationship, if the detrimental effect to that one entity within the surrounding community were sufficiently severe, would it be your position that DOI is still required to go forward and approve the new gaming? No, no. I don't, that is not my position. I believe that in that situation, if there truly were a catastrophic effect on a nearby tribe's ability to run its government and provide services to its people, I absolutely think that Interior could take that into account in making the determination whether this is detrimental to the surrounding community as a whole. But as you predicted, I'm going to say that's not this case. Okay, so then let me ask you, right, why isn't that this case? Why should we have assurance that DOI gauged, correctly gauged, considered the harm that Kalispell was going to face, which I'll tell you on my scorecard, there is some harm to the surrounding community, but the threshold for the second part of the test was still met because there was not detriment to the overall community. Interior did a very detailed analysis. It looked at exactly how much revenue, how much Kalispell's revenues would decline. It found that in the first year of full build-out of Spokane's casino, which at the time was 2020, that is now far off in the future. It didn't happen in 2020, which means that Interior's projections about the impact on Kalispell are much higher than they would have been had they known how long this was going to take. And what it found was that Kalispell would have 13.8 percent less than it did at the time the determination was made, the last full year for which they had numbers, which was 2011. And they said, given that, and given how substantial... Not counting the individual payments. No, no, no, Judge Berzon. Counting the per capita payments. So after you take out the per capita payments, which I agree with you are harm, it's just different kind of harm, that left 6.7 percent. They said there was going to be a 6.7 percent reduction and that would then dissipate over time. They found, after doing a very in-depth analysis of what happens when a casino comes into a non-saturated market like Spokane, that after 12 months, normative revenue growth will resume and ultimately the new casino will grow the market for everyone. And I should say that predictive judgment has been worn out. I mean, Kalispell, since Spokane's facility opened in 2018, and I should say that when it opened, it was not even what was called phase one in this analysis. It was something much smaller. But since then, Kalispell has dramatically expanded their casino. They have just announced plans for further expansion. They have started yet another casino. They have done quite well. And I understand we need to look at the record that was before the agency, but I think it's worth noting that reality has sort of worn out Interior's predictive judgment at the time that this would not have a catastrophic impact on Kalispell. Okay. You are very over your time. Thank you so much. Our condoning. But we will go to Mr. Ray Baer and we'll give you some more minutes. Thank you, your honors. I'd like to respond to several of the comments. First, it is clear from the department's argument today that they are reiterating the approach that they took in their decision, which did not comport with IGRA. Namely, they applied a threshold to considering whether Kalispell's detriments were in fact detriments and determined that because they did not count because they weren't long enough or large enough, they did not need to balance them with the benefits to the other components of the surrounding communities. Tell me where in the record you would find that. It is in pages 61 to 62 of the record of the two-part determination, which is pages of our excerpts of record 642 to 643 in the confidential version. Well, it says that it would not prohibit the Kalispell tribal government from providing essential services and facilities to members, which would tell you something about what it thought the nature of the detriment was. But where can you figure out that they didn't count the detriment at all? Because they didn't count the actual dollar value or the actual effect that it would have on their governmental budget and services or the general welfare of their members. I don't understand that statement. I read the report differently, and I think opposing councils explain how they quantified. It's a projection, to be sure, but they quantified what they thought Kalispell's, the hit Kalispell's budget would take and how that would change over time. Council, so what am I missing there? If you look at page 624 of the excerpts of record, this is DOI's own expert analysis. The regulations require considering the costs of the impacts. They calculated the cost to Kalispell in just the first year was just the first phase before the additional thousand slot machines and before the 300 room hotels are added. That impact will be about $29 million, or as Spokane conceded in their brief, 32% of Kalispell's budget. That includes completely eliminating per capita and elder payments, which are absolutely essential to the general welfare of the members, especially as noted on page 396 of the record. Kalispell, before our casino was established, had a per capita income of about $8,800 per year. So these are not gratuities. These are absolutely essential. When Ms. Spinelli said that the net impact was about 13%, counting the per capita payments, is that accurate? This is the department's effort basically at dissembling. Instead of comparing the income and the year that there's impact versus what the projection is for the year as it would be without that impact, as Interior's own expert calculated on page 624, they're comparing the impact in future years with revenue growth to the revenue without the other casino nine years previously, not including all the market growth over the intervening period. If I could just highlight a couple of other points. Ms. Spinelli asserted that the impact was considered imbalanced, but it wasn't within the surrounding community. It was simply rejected. She noted that it was addressed in the final environmental impact statement. As we noted in our brief and as referenced on pages 414 to 415, the EIS addressed NEPA. It did not address the two-part determination. Next, it seems to be that the standard they're saying is that as long as the government lights are kept on and there's some bare minimum that is continued, that it's okay to eliminate everything or is in this case, as Interior's own expert calculated, a more than 40% impact on governmental services in just the first year that may take half a dozen years to go away. These impacts are real. They were not evaluated by the Department of Interior other than being simply rejected. So while the Kalispell tribe certainly supports the effort of Spokane to develop their own for their government, as Kalispell has done, the district court decision, which only addressed this in two paragraphs on one page of its decision, excerpts of record 125. This decision must be reversed in the case remanded for reconsideration and mitigation. Thank you. Thank you all for your arguments and complicated case. The case of Kalispell tribe of Indians versus U.S. Department of Interior will go to the next and last case.
judges: Berzon, Christen, Bade